IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01365-CNS

LAZARO ALBERTO LAPINELL ALONSO,

      Petitioner,

v.

JUAN BALTASAR, Warden of the Denver Contract Detention Facility, acting in his official capacity;
KELEI WALKER, Field Office Director or Acting Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, acting in her official capacity;
TODD LYONS, Acting Director of United States Immigration and Customs Enforcement, acting in his official capacity;
MARKWAYNE MULLEN, Secretary of the United States Department of Homeland Security, acting in his official capacity;
PAMELA BONDI, Attorney General of the United States, acting in her official capacity;
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT;
EXECUTIVE OFFICE OF IMMIGRATION REVIEW; and
DEPARTMENT OF HOMELAND SECURITY,

      Respondents.

---

**ORDER**

---

Before the Court is Petitioner's Petition for Writ of Habeas Corpus 28 U.S.C. § 2241. ECF No. 1. As the briefing demonstrates that Petitioner's now all too familiar challenge to Respondents' authority under § 1225(b)(2) is fundamentally legal in nature, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court GRANTS the petition and ORDERS Respondents to immediately

1

release Petitioner from immigration detention. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 8, 10.

## I.    LEGAL STANDARD

District courts may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The individual in custody bears the burden of proving that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## II.    BACKGROUND

Petitioner Lazaro Alberto Lapinell Alonso is a citizen of Cuba. ECF No. 1 ¶ 5. He arrived in the United States on October 25, 2023 and was granted humanitarian parole the same day. *Id.* ¶ 1. Since then, Petitioner has resided in Florida. *Id.* In February 2025, Petitioner filed a timely I-485 application for Adjustment of Status with the United States Citizenship and Immigration Services (USCIS). *Id.* ¶ 1; ECF No. 1-1 at 5. While in the United States, Petitioner reported to his required check-ins with Immigration and Customs Enforcement (ICE). *Id.* ¶ 2.

On October 13, 2025, Petitioner was arrested in Florida, but the charges were subsequently No Actioned, and Petitioner was not charged. *Id.* ¶ 2; ECF No. 1-1 at 7–8. Other than this No Actioned arrest, Petitioner has never committed a crime, been convicted of a crime, or otherwise been arrested, *id.* ¶ 30—facts that Respondents do not dispute. Nevertheless, following his October 2025 arrest, Petitioner was taken into custody by ICE, *id.* ¶ 27, where he has been ever since. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora Colorado. *Id.* ¶ 3.

2

On February 9, 2026, an Immigration Judge (IJ) granted Petitioner's Motion to Terminate Proceedings, permitting Petitioner to apply for an adjustment of status and gain lawful permanent residence in the United States under the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161 (CAA). *Id.* ¶ 2; *see also* ECF No. 1-1 at 10–11 (February 9, 2026 Order of the Immigration Judge). Indeed, in granting the motion to terminate, the IJ implicitly acknowledged Petitioner's eligibility to apply for an adjustment of status under the CAA:

> The respondent seeks to adjust status under the Cuban Refugee Adjustment Act (CAA) of November 2, 1966 (Pub. L. No. 89-732, 80 Stat. 1161, as amended, before (USCIS). To adjust under the CAA, the principal applicant must establish that he is a native or citizen of Cuba, was inspected and admitted or paroled into the United States, was physically present in the United States for at least 1 year before applying for such benefits, and merits relief as a matter of discretion. See CAA § 1; Pub. L. No. 89-732, 80 Stat. 1161. The Department did not present the court with any negative discretionary factors. Based on the record before it, the court grants the respondent's request to terminate proceedings to pursue adjustment of status before USCIS.

ECF No. 1-1 at 10. On March 12, 2026, the Department of Homeland Security (DHS) filed an appeal challenging the IJ's Order terminating proceedings with the Board of Immigration Appeals. ECF No. 1 ¶ 2.

### III.    ANALYSIS

The legal issues presented here are not before this Court for this first time. Petitioner, who has been in ICE's custody since October 2025, *id.* ¶ 27, contends that this detention violates his due process rights, *id.* at 15. As relief, Petitioner requests that the Court enter "an order directing Respondents to release Petitioner from custody; or in the alternative, to release Petitioner from custody subject to appropriate supervision; or in the

alternative, to provide an actual custody redetermination hearing within seven days." *Id.* ¶ 10. In response, Respondents argue that "Petitioner is properly treated as an 'applicant for admission' who is seeking admission to the United States, which makes him subject to mandatory detention under § 1225(b)." ECF No. 8 at 5. The Court agrees with Petitioner that his mandatory detention under § 1225(b) is improper for three reasons.

*First*, as an initial matter, and as this Court has repeatedly held, even if Petitioner were properly detained and placed in removal proceedings, he would be subject to the discretionary detention provided for in § 1226(a)—and not the mandatory detention required by § 1225(b)—because Petitioner has been present in the United States for over two years. *See generally, e.g.*, *Singh v. Baltazar,* 26-cv-00336-CNS, 2026 WL 352870 (D. Colo. Feb. 9, 2026); *Concha-Gonzales v. Noem*, No. 1:26-cv-00001-CNS, 2026 WL 194178, at *4–5 (D. Colo. Jan. 26, 2026); *Alfaro Herrera v. Baltazar, et. al*, No. 1:25-cv-04014-CNS, 2026 WL 91470, at *7 (D. Colo. Jan. 13, 2026); *Hernandez v. Baltazar, et al.*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025). Respondents' arguments that § 1225 applies are thus unpersuasive.

*Second*, because Petitioner would be subject to § 1226(a) and not § 1225(b), the only basis on which to justify his detention would be a determination that Petitioner is either a flight risk or a danger to the community. *See, e.g.*, *Cunha v. Freden*, --- 4th ----, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026) ("[N]oncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."). Petitioner contends that he is neither,

4

ECF No. 1 at 10, which Respondents do not dispute. Indeed, the decision to release Petitioner on parole two years ago while his removal proceedings were initiating "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018). The continued validity of that determination is supported by the fact that in February 2026, an IJ granted Petitioner's motion to terminate so that Petitioner could pursue an adjustment of status under the CAA. ECF No. 1-1 at 10. Indeed, in its order, the IJ specifically noted that the government "did not present the court with ***any negative discretionary factors***" such that Petitioner's motion to terminate should not be granted. *Id.* (emphasis added). Thus, there is no indication in the record before the Court that any such determination is no longer valid.

*Third*, and most significantly, as a Cuban citizen, Petitioner is entitled to pursue an adjustment of status and seek lawful permanent residence in the United States under the CAA. As this Court has previously found, the CAA provides Cuban citizens in the United States with certain opportunities.[1] *See Concha-Gonzales*, 2026 WL 194178, at *4–5. Specifically, "[b]y taking advantage of the CAA, Cuban nationals, who have no documents authorizing their presence in the United States, *can remain in the United States* without

---

[1] The CAA provides that:

> [T]he status of any [noncitizen] who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959 and has been physically present in the United States for at least two years, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an [noncitizen] lawfully admitted for permanent residence if the [noncitizen] makes an application for such adjustment, and the [noncitizen] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence.

CAA, Pub. L. No. 89-732, § 1.

demonstrating that they suffered persecution or proving refugee status." *Id.* at \*4 (citing *United States v. Dominguez*, 661 F.3d 1051, 1067 (11th Cir. 2011) (emphasis added)). Indeed, it was precisely for this reason that the IJ granted Petitioner's motion to terminate. *See* ECF No. 1-1 at 10 (granting Petitioner's motion to terminate so that Petitioner could "pursue adjustment of status before USCIS" under the CAA and noting that the government "did not present the court with any negative discretionary factors"). This is because "'(1) an application for adjustment of status cannot be filed by someone who is not physically present in the United States,' and (2) generally, 'any submitted application is deemed abandoned and terminated if the applicant leaves the country, including, as is relevant here, if the applicant is removed via immigration proceedings.'" *Concha-Gonzales*, 2026 WL 194178, at \*4 (citing *Alfaro Herrera*, 2026 WL 91470, at \*7).

Respondents' attempt to revive Petitioner's removal proceedings and, in effect, prevent him from applying for an adjustment of status under the CAA is thus improper. *See id.* ("[B]ecause 'Congress intended that Petitioner have an opportunity to pursue lawful permanent residence in the United States' as a Cuban national, pursuing Petitioner's removal before his I-485 application is adjudicated 'summarily strip[s]' Petitioner of the benefits Congress intended that individuals like him receive." (citing *Alfaro Herrera*, 2026 WL 91470, at \*7)); *see also Succar v. Ashcroft*, 394 F.3d 8, 27 n.25 (1st Cir. 2005) ("[W]here Congress has wanted to benefit [noncitizens] from certain countries," as it has with Cuban citizens and natives, "it has enacted special legislation which allows these individuals to enter the United States and apply for permanent resident

6

status . . . *without being subjected to removal proceedings*." (citing CAA, Pub.L. No. 89–732, 80 Stat. 1161) (emphasis added)).

Because Respondents fail to provide a legitimate explanation for Petitioner's detention or the renewal of his removal proceedings, Petitioner's immediate release from immigration detention is warranted. *See generally, e.g., Concha-Gonzales*, 2026 WL 194178.

## IV.    CONCLUSION

Accordingly, consistent with the foregoing, it is HEREBY ORDERED that:

1. Petitioner's Petition for Writ of Habeas Corpus 28 U.S.C. § 2241, ECF No. 1, is GRANTED;

2. Respondents SHALL TRANSFER Petitioner to Florida and RELEASE him from custody IMMEDIATELY, but no later than within 24 hours of this Order,[2] with all of Petitioner's personal property returned to him, including any driver's license, passport, employment authorization documents, and/or identification cards that were taken into Respondents' possession in connection with Petitioner's detention; additionally, upon Petitioner's release, Respondents may not impose any additional conditions of release or supervision beyond those that he was subject to immediately prior to his October 2025 detention;

3. Respondents SHALL FILE a status report within TWO DAYS of Petitioner's release from custody to certify compliance with this Order; and

---

[2] If arranging a flight to Florida will prolong Petitioner's detention by more than 24 hours after entry of this Order, Respondents MUST immediately notify Petitioner and inquire as to whether Petitioner would prefer to be released immediately or wait until the government has arranged his transport back to Florida.

4. Respondents are further ENJOINED AND RESTRAINED from re-detaining Petitioner at a later date unless they again demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing at which the government shall bear the burden of proof, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

DATED this 1st day of May 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge